Therefore, for the reasons stated above, we find

No error.

Judges BECTON and JOHNSON concur.

STATE OF NORTH CAROLINA v. JIMMY CHRISCOE

No. 8722SC375

(Filed 20 October 1987)

**Criminal Law § 128.2— mistrial improperly entered over defendant's objection— double jeopardy plea granted**

In a prosecution of defendant for committing sexual offenses against his stepdaughter, the trial court in his first trial erred in entering a mistrial over defendant's objection when the prosecuting witness refused to testify, since there was no testimony from anyone to suggest that the witness was influenced improperly and no other evidence of any misconduct; therefore, defendant's plea of former jeopardy must be granted.

APPEAL by defendant from *Freeman, Judge.* Order entered 9 December 1986 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 29 September 1987.

*Attorney General Lacy H. Thornburg, by Associate Attorney General L. Darlene Graham for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Gayle L. Moses for defendant appellant.*

BECTON, Judge.

Defendant, Jimmy Chriscoe was convicted of Second Degree Sexual Offense and sentenced to 10 years imprisonment. He appeals. We reverse.

I

Defendant's first trial began on 23 July 1986. He was accused of engaging in sexual relations with his stepdaughter who was then a minor, and who had been characterized by social workers as "mildly retarded." The State called the alleged victim to testify. After giving her name and answering several general questions, she refused to respond to further questioning by the prosecutor or the trial judge. The prosecutor moved for a mistrial, and the following colloquy occurred between the prosecutor (Mr. Morris), the trial judge, and defense counsel (Mr. Cunningham).

COURT: Do you want to make a motion, Mr. Morris?

MR. MORRIS: Motion for a mistrial, based upon the fact that this week when this witness was interviewed by an assistant in our office, there was no problem with her telling what happened and the nature of the criminal offense; and we proceeded to select a Jury and impanel that Jury and start with the case, and now she won't testify. I would argue to the Court there has been some misconduct either inside or outside this courtroom between the time that we talked with the prosecuting witness, the main witness in the case, and the time she came to be called as a witness in this Courtroom and testify. That has resulted in prejudice to the State's case. I feel like there is sufficient grounds for the State to ask for a mistrial in this case.

COURT: She did testify in District Court?

MR. MORRIS: She did testify in the Probable Cause Hearing in District Court and was under oath at that time.

COURT: And she has given statements to the social worker?

MR. MORRIS: Yes, sir, and to the police officer, and she has further shown them with the anatomically-correct dolls what happened to her between she and this Defendant.

COURT: Is that all you want to say about it?

MR. MORRIS: Yes, sir.

COURT: I assume you want to object to that?

MR. CUNNINGHAM: Yes, sir, I'd like to object. The District Attorney can make any assertion he wants to in this Courtroom, and I think the Court has to consider the evidence. I'm not saying that the District Attorney is incorrect as far as his allegations of misconduct, but I think if he has any proof of misconduct, I think he is going to have to present it to the Court for the Court to consider it for grounds for mistrial. I think the State is in the position that it can't proceed because it doesn't have a competent witness, and I would ask the Court to dismiss the charges.

MR. MORRIS: Just a very short response. It is very hard to prove misconduct outside of this Courtroom when we are in here trying a case; but I'll say to the Court that the police officer — and if you need her sworn — Ms. Harris observed the mother of the prosecuting witness, the prosecuting witness and the brother, going to the jail following the Defendant as he was led out of the Courtroom yesterday; and then I see the three of them — without the Defendant, of course — walking through town, and that is kind of unusual conduct during the course of a Jury trial, for the prosecuting witness where there is an allegation of some sexual offense, in the presence of the Defendant on his way back to the jail.

COURT: The Court will find as a fact under this motion that the Defendant is charged with second-degree sexual offense; and that the Jury was selected and impaneled Wednesday, yesterday; and that some testimony was presented from one witness at that time; that the prosecuting witness, the alleged victim of the crime, was present in the Court with her mother at that time. The Court was recessed until 9:30 this morning, at which time the prosecuting witness and her mother did not appear for Court. Did they finally show, or did you have to send the officer after them?

MR. MORRIS: The officer had to call and find out why they weren't here, but an officer was not sent after them, Your Honor.

COURT: That after being called by the officers, they later showed up approximately at 10:45 a.m. The prosecuting witness testified under oath at the Probable Cause Hearing; that she gave statements to the social workers, the police and the

District Attorney out of the presence of her mother; that she made statements to them indicating that a crime had taken place; and that she gave illustration with an anatomically-correct doll; that the prosecuting witness has been living in the custody and in the presence of the mother the entire period of time.

Further find that upon being called as a witness, the prosecuting witness refused to answer questions or testify.

The Court will further find as a fact that the Department of Social Services intends at this time to take out a petition to remove the prosecuting witness from the custody of her mother.

There is substantial reason for mistrial, and there is manifest necessity for a mistrial, and it would be in the best interest of justice that a mistrial be granted, and the Court will allow the motion for a mistrial in this case.

Defendant was convicted at a second trial on 8 December 1986. On appeal he assigned three errors: (1) the trial judge erred in denying defendant's motion to dismiss for former jeopardy because a mistrial was erroneously ordered at the first trial; (2) the trial judge erred in failing to conduct a *voir dire* hearing out of the jury's presence to determine the competency of the prosecutor's chief witness and in failing to make findings of fact and conclusions of law regarding her competency; and (3) the trial judge erred in denying defendant's motion to dismiss at the close of the evidence because the State did not present competent substantial evidence of his guilt.

II

We first consider defendant's contention that the trial judge erred in ordering a mistrial in his case on 24 July 1986. To obtain a mistrial, the prosecutor must show "manifest necessity." *Arizona v. Washington*, 434 U.S. 497, 505, 54 L.E. 2d 717, 728 (1978). Although this requirement "[does] not describe a standard that can be applied mechanically," it does establish that the prosecutor's "burden is a heavy one." *Id.* at 506, L.E. 2d at 728. More specifically, N.C. Gen. Stat. Sec. 15A-1063(1) (1983) provides that the trial judge may declare a mistrial "if it is impossible for the trial to proceed in conformity with the law." And to "protect [the

accused] from sudden and arbitrary judicial action," N.C. Gen. Stat. Sec. 15A-1064 (1983) requires the trial judge to make findings of fact with respect to the grounds for the mistrial. *State v. Jones,* 67 N.C. App. 377, 382, 313 S.E. 2d 808, 812 (1984).

The State cites several cases in which North Carolina courts have affirmed declarations of mistrial under section 15A-1063(1). In those cases, mistrials were ordered as a result of some incapacity of either a member of the court, a juror or an attorney, or evidence of jury tampering. *See State v. Battle,* 267 N.C. 513, 148 S.E. 2d 599 (1966) (illness of defendant's attorney); *State v. Boykin,* 255 N.C. 432, 121 S.E. 2d 863 (1961) (illness of judge); *State v. Cooley,* 47 N.C. App. 376, 268 S.E. 2d 87, *appeal dismissed,* 301 N.C. 96, 273 S.E. 2d 300 (1980) (evidence of jury tampering, but no showing that defendant was responsible); and *State v. Ledbetter,* 4 N.C. App. 303, 167 S.E. 2d 68 (1969) (illness of juror). The State argues that the rationale in *Cooley* is applicable to the instant case because proof of jury misconduct was particularly difficult to demonstrate, and that the victim in this case, much like the jurors who were allegedly tampered with in *Cooley,* could not be expected to admit that misconduct occurred. Therefore, it would have been fruitless for the State to seek the victim's testimony.

We recognize that the prosecutor was placed in a difficult position when his key witness suddenly refused to cooperate. However, the record here is devoid of *any evidence* of misconduct. There is no testimony from anyone to suggest that the witness was influenced improperly. The Court's power to declare a mistrial must be "exercised with caution and only after careful consideration of all available evidence and only after making the requisite findings of fact on the basis of evidence before the Court at the time judicial inquiry is made." *State v. Jones,* 67 N.C. App. 377, 382, 313 S.E. 2d 808, 812 (1984), *quoting State v. Crocker,* 239 N.C. 446, 452, 80 S.E. 2d 243, 248 (1954). The record here contains innuendo and suspicion only. Although the court followed the mandate to make findings, there is no evidence on which those findings could be based.

When a mistrial is improperly ordered over defendant's objection, a plea of former jeopardy must be granted. *See Washington.* The order of the lower court is reversed.

Because we reverse defendant's conviction on the basis of his first assignment of error, we need not and do not address his remaining arguments.

Reversed.

Judges JOHNSON and PARKER concur.